UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:23-CV-00678-RSE

**CARI A. H-R.**                                                                                                    **PLAINTIFF**

**VS.**

**MARTIN O'MALLEY,**
*Commissioner of Social Security*[1]                                                              **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

The Commissioner of Social Security denied Claimant Cari A. H-R.'s ("Claimant's") application for disability insurance benefits. Claimant presently seeks judicial review of the Commissioner's denial pursuant to 42 U.S.C. § 405(g). Both Claimant (DN 13) and the Commissioner (DN 15) have filed a Fact and Law Summary. Claimant filed a reply (DN 16). The Parties have consented, under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed. (DN 9).

### I. Background

Cari A. H-R. ("Claimant") applied for disability insurance benefits under Title II of the Social Security Act on August 10, 2021. (Transcript, hereinafter ("Tr."), 194). The application alleged Claimant's disability began on November 23, 2017 (Tr. 289) due to "bipolar, osteoarthritis in both shoulders, bursitis in right hip, exposed nerves in back, narrowing of spinal column,

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Federal Rule of Civil Procedure 25(d), Martin O'Malley is substituted for Kilolo Kijakazi as Defendant in this case.

fibromyalgia, chronic obstructive pulmonary disorder, status-post right hip fracture, degenerative disc disease of the spine, major depressive disorder, [and] ADHD." (Tr. 226). Claimant's applications were denied at the initial and reconsideration levels. (Tr. 110-113, 116-119).

At Claimant's request, Administrative Law Judge Jennifer Thomas ("ALJ Thomas") conducted a hearing in Paducah, Kentucky on October 25, 2022. (Tr. 32). Claimant and her counsel appeared by telephone.[2] (Tr. 34). An impartial vocational expert also participated in the hearing. (*Id.*). During the hearing, Claimant amended her onset date to January 11, 2020. (Tr. 38).

Claimant provided the following testimony. She is in her early fifties, lives with her wife, and has an associates degree in business management. (Tr. 34, 37-38). She has her driver's license but is only able to drive sometimes due to her anxiety. (Tr. 37). Since May of 2022, Claimant has worked part-time (about 14 hours per week) stickering merchandise for Dollar General Stores. (Tr. 39). She cannot work a full-time schedule because she cannot be on her feet for an extended time. (Tr. 40). She also cannot sit for long periods of time without her hips and lower back hurting. (Tr. 48). In the past, Claimant has worked as a security guard, customer service representative, maintenance engineer, office clerk, hand packager, phlebotomist, financial aid representative, and salesclerk. (Tr. 42-47).

Since the last administrative decision, Claimant believes her condition has worsened. She cites getting injections more frequently in her back, hips, and knee, and highlights that she has now been diagnosed with bipolar disorder and anxiety. (Tr. 49). She rotates between getting ablation therapy and an epidural every three months to ease her pain. (Tr. 50). Claimant estimates her pain averages at a 6.5-7 on a 10-point scale. Up until six months before the hearing, Claimant was smoking two packs of cigarettes a day. (Tr. 58).

---

[2] The hearing was conducted telephonically because of the COVID-19 pandemic. (Tr. 34). Claimant signed a COVID-19 Public Health Emergency Agreement Forms wherein she agreed to a telephone hearing. (Tr. 162-63).

As for Claimant's abilities, she says she can stand in one place for 20-25 minutes and that walking is a little better if she can lean on a pushcart. (Tr. 51). She doesn't grocery shop alone. She can carry a bag of chips or loaf bread at the store but not bags full of groceries. (Tr. 51). Claimant cleans up and cooks basic meals but cannot mop, vacuum, or make the bed. (Tr. 53). On Saturdays, she and her wife watch their grandchildren play football and cheerlead. (Tr. 54). She can no longer perform her previous hobbies, like woodworking, working in the yard, taking the dogs for a walk, and caring for her grandkids.

ALJ Thomas issued an unfavorable decision on December 27, 2022. (Tr. 18-27). She applied the Commissioner's five-step evaluation process for determining whether a claimant is disabled, 20 C.F.R. § 404.1520, and found as follows. First, Claimant has not engaged in substantial gainful activity since January 11, 2020. (Tr. 20). Second, Claimant has the following severe impairments: post-concussive syndrome; status post reduction and internal fixation of a right femoral neck fracture; fibromyalgia; chronic obstructive pulmonary disease (COPD); degenerative disc disease; depressive disorder; and attention deficit hyperactivity disorder (ADHD). (Tr. 20-21). Third, Claimant does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment from 20 C.F.R. Pt. 404, Subpt. P, App'x 1. (Tr. 21-22). At the fourth step, ALJ Thomas determined Claimant has the residual functional capacity (RFC) to perform "light work[,]" with the following limitations:

> [S]he can occasionally climb ramps and stairs. She can never climb ladders, ropes, and scaffolding. She can occasionally stoop, kneel, crouch, and crawl. She can have occasional exposure to concentrated atmospheric conditions as defined by the Dictionary of Occupational Titles (DOT)/Selected Characteristics of Occupations (SCO). She can frequently reach overhead and all around with the bilateral upper extremities. She can have no exposure to moving mechanical parts and unprotected heights. She can have occasional exposure to vibrations. She can understand, remember, and carry out simple instructions. She can maintain concentration, persistence, and pace for the performance of simple tasks. She can have occasional

>interaction with coworkers, supervisors, and the public. She should not perform a production based job (e.g., assembly line job).

(Tr. 22-25). Additionally at step four, ALJ Thomas found that Claimant was unable to perform any of her past relevant work. (Tr. 25). Fifth and finally, considering the Claimant's age, education, work experience, and RFC, ALJ Thomas determined there were jobs that existed in the national economy which Claimant can perform. (Tr. 26).

ALJ Thomas concluded Claimant was not under a disability, as defined in the Social Security Act, from January 11, 2020, through the date of the decision. (*Id.*). Claimant appealed Thomas' decision. (Tr. 189-90). The Appeals Council declined review, finding Claimant's reasons for disagreement did not provide a basis for changing ALJ Thomas' decision. (Tr. 1-4). At that point, the denial became the final decision of the Commissioner, and Claimant appealed to this Court. (DN 1).

## II. Standard of Review

Administrative Law Judges make determinations as to social security disability by undertaking the five-step sequential evaluation process mandated by the regulations. *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 803-04 (6th Cir. 2008) (citing *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990)); 20 C.F.R. §§ 404.1520(b), 416.920(b). Throughout this process, the claimant bears the overall burden of establishing they are disabled; however, the Commissioner bears the burden of establishing the claimant can perform other work existing in significant numbers in the national economy. *Id.* at 804 (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

When reviewing the Administrative Law Judge's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations

omitted). Instead, the Court's review of the Administrative Law Judge's decision is limited to an inquiry as to whether the Administrative Law Judge's findings were supported by substantial evidence, 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (citations omitted), and whether the Administrative Law Judge employed the proper legal standards in reaching his conclusion. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence exists "when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993). The Supreme Court has clarified "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high[.]" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted).

III. Analysis

Claimant mounts three challenges to ALJ Thomas' RFC Analysis at Step Four. First, Claimant argues ALJ Thomas failed to provide limitations or otherwise discuss the mental limitations she found as to adaptation at Steps Two and Three in Claimant's RFC. (DN 13, at PageID # 1698-1701). Second, Claimant believes ALJ Thomas did not appropriately evaluate Consultative Examiner Susie Sloan's opinion pursuant to 20 C.F.R. § 404.1520c(b)(2). (*Id.* at PageID # 1702-1707). Lastly, Claimant alleges ALJ Thomas improperly rejected Claimant's subjective allegations and failed to cite any genuine inconsistencies between Claimant's allegations and the objective medical evidence. (*Id.* at PageID # 1707-1710).

A claimant's RFC is defined as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Pt. 404, Subpt. P, App'x 2 § 200.00(c). Put otherwise, the RFC is the most a claimant can do despite their physical and mental limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). An ALJ bases

their RFC determination on "all of the relevant medical and other evidence" in the case record. *Id.* (a)(3). This requires the ALJ to evaluate the persuasiveness of the medical opinions in the record and assess the claimant's subjective allegations. 20 C.F.R. §§ 404.1520c, 404.1529(a).

### A. Did ALJ Thomas Err by Not Adopting or Discussing her Step Two and Three Findings that Claimant is Moderately Limited in Adapting or Managing Herself in the RFC

Claimant argues that ALJ Thomas should have implemented her Step-Three finding that Claimant was moderately limited in her ability to adapt and manage herself into the RFC. (DN 13, at PageID # 1698-1701). At the very least, Claimant asserts ALJ Thomas should have explained why she omitted such a limitation from her RFC assessment. (*Id.*). This error, in Claimant's view, is not harmless because at least one of the jobs on which the denial rests could be performed by an individual with moderate restrictions in the ability to adapt and manage oneself. (*Id.*).

The Commissioner responds that Paragraph B findings need not be included as functional limitations in the RFC determination. (DN 15, at PageID # 1718-22). According to the Commissioner, ALJ Thomas appropriately translated the no-more-than-moderate Paragraph B limitations that she found consistent with and supported by the overall record into concrete, work-related terms as part of the Claimant's RFC. (*Id.*). Specifically, the Commissioner points out that ALJ Thomas limited Claimant to simple instructions, simple tasks, non-production based work, and occasional interactions with coworkers, supervisors, and the general public. (*Id.* (citing Tr. 22)).

In reply, Claimant reiterates that even if ALJ Thomas was not required to adopt the Paragraph B findings verbatim in the RFC, she was still required to explain her omission of the Paragraph B limitations. (DN 16, at PageID # 1733-34). Claimant relies on another case from this District, *William G. v. O'Malley*, wherein the Court determined that an ALJ's lack of explanation

prevented meaningful review. (*Id.* (citing No. 3:23-CV-00103-LLK, 2024 WL 1141019, at *3 (W.D. Ky. Mar. 15, 2024) (citation omitted))).

At Step Two, ALJ Thomas determined Claimant's depressive disorder and ADHD were severe impairments. (Tr. 20-21). Then, at Step Three, in analyzing whether Claimant's mental impairments met or medically equaled a listed impairment, ALJ Thomas considered the four broad functional areas known as the "paragraph B" criteria and found Claimant had "no more than moderate limitation" in each area. (Tr. 21). One of these functional areas is "adapting and managing oneself." This area of mental functioning refers to a claimant's abilities to "regulate emotions, control behavior and maintain well-being in a work setting."[3] 20 C.F.R., Pt. 404, Subpt. P, App'x 1, § 12.00(E)(4).

Nothing in the regulations requires an ALJ to adopt their Step Three limitations in the subsequent RFC assessment. That is because Step Three and the RFC serve different functions. Step Three regulates a "narrow category of adjudicatory conduct." *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 649 (6th Cir. 2006) (en banc). It "governs the organization and evaluation of proof of listed impairments that, if supported, renders entitlement to benefits a foregone conclusion." *Id.* The RFC is a subsequent determination distinct from Step Three. *See Turbeville v. Colvin*, No. 1:12-CV-00061, 2014 WL 6605483, at *10 (M.D. Tenn. Nov. 19, 2014) ("[Step 3 and the RFC] are separate steps and a finding at one step does not necessarily equate to the same finding being made at a later step."). The RFC "requires a more detailed assessment by itemizing the various

---

[3] The Listing provides examples which may be considered in evaluating this functional area, including: responding to demands; adapting to changes; managing your psychologically based symptoms; distinguishing between acceptable and unacceptable work performance; setting realistic goals; making plans for yourself independently of others; maintaining personal hygiene and attire appropriate to a work setting; and being aware of normal hazards and taking appropriate precautions. *Id.* at (E)(4).

functions contained in the broad categories found in Paragraphs B and C." SSR 96-8p, 1996 WL 374184, at *4.

Therefore, an ALJ's finding that a claimant has "moderate" or even "marked" limitations in the Paragraph B criteria at Step Three, does not necessarily mean that the claimant's RFC will have corresponding or identical limitations. *See, e.g., Thorpe v. Comm'r of Soc. Sec.*, No. 4:23-CV-2-CEA-DCP, 2023 WL 8705497, at *9 (E.D. Tenn. Nov. 20, 2023) ("[T]he ALJ is not required to provide specific RFC accommodations for limitations in the paragraph B criteria."); *Pinkard v. Comm'r of Soc. Sec. Admin.*, No. 1:13CV1339, 2014 WL 3389206, at *10 (N.D. Ohio July 9, 2014) (finding that "the ALJ does not have to include paragraph B finding in his RFC finding" and concluding that "the ALJ was correct in finding that Plaintiff had moderate limitations in evaluating her mental impairment under the listings at step three of the sequential evaluation process, and in not including a 'moderate limitation in concentration, persistence, and pace' in his residual functional capacity finding at steps four and five"); *Bailey v. Astrue*, No. CIV.A. 10-227-JBC, 2011 WL 3880503, at *2 (E.D. Ky. Aug. 31, 2011) ("The RFC assessment takes into account all of the relevant evidence in the case record, ... and the ALJ was not required to specifically adopt 'paragraph B' findings in his development of a complete and accurate assessment of Bailey's mental impairment.") (citing SSR 96-8p, 1996 WL 374184); *see also Fellows v. Comm'r of Soc. Sec.*, No. 1:14-CV-506, 2015 WL 4134699, at *6 (W.D. Mich. July 8, 2015) (agreeing with the court in *Pinkard*). ALJ Thomas was not required to automatically incorporate her Step Three Paragraph B limitation as to adapting and managing oneself into the Claimant's RFC.

Moreover, Claimant's reliance on *William G. v. O'Malley* is misplaced. In that case, the court determined that an ALJ did not build an accurate and logical bridge between his finding that claimant's depression caused mild mental functioning limitations at Step Three and the RFC,

8

which included no mental health impairments. 2024 WL 1141019, at *3. The court specifically found it was unclear whether the claimant's mild mental limitations would preclude performance of his highly skilled past relevant work as a nurse practitioner and case manager. *Id.* Here, ALJ Thomas did not find Claimant was capable of any past relevant work and did not craft an RFC with no mental health impairment limitations.

Regardless, ALJ Thomas did not err by not explicitly explaining her omission of the Paragraph B limitations in the RFC. The relevant inquiry is whether ALJ Thomas' RFC determination related to Claimant's mental impairments is supported by substantial evidence and whether ALJ Thomas provided an accurate and logical bridge between the evidence and her conclusions. The Court answers both affirmatively.

ALJ Thomas considered Claimant's treatment history, objective medical findings, assessments from medical professionals, and Claimant's subjective complaints and testimony. (Tr. 24). More specifically, ALJ Thomas discussed Claimant's prescription for Adderall and counseling, which she has responded well to, treatment notes reflecting her concentration as just mildly or moderately impaired, and Claimant's appearance as talkative, pleasant and reports of doing well and feeling great to physicians. (*Id.*). ALJ Thomas concluded that "[t]he totality of the evidence relevant to claimant's mental functioning is certainly not inconsistent with finding the claimant to continue to have no more than a moderate degree of mental limitation." (*Id.*).

ALJ Thomas then translated these no more than moderate mental limitations into concrete work-related terms by adding the following restrictions to the RFC: Claimant can understand, remember, and carry out simple instructions, can maintain concentration, persistence, and pace for the performance of simple tasks, can have occasional interaction with coworkers, supervisors, and the public, and should not perform a production-based job. (Tr. 22). The Court finds ALJ Thomas'

9

evaluation of Claimant's mental impairments in the RFC is supported by substantial evidence in the record and no error results.

### B. Did ALJ Thomas Err in Evaluating the Consultative Examiner's Medical Opinion?

Next, Claimant argues ALJ Thomas committed harmful legal error by failing to properly evaluate Consultative Examiner Susie Sloan's medical opinion pursuant to 20 C.F.R. 404.1520c(b)(2). (DN 13, at PageID # 1702-1707).

In determining a claimant's RFC, the ALJ must evaluate the persuasiveness of the medical opinions in the record. 20 C.F.R. §§ 404.1520c, 404.1529(a). The regulations specify that an ALJ will not give any specific evidentiary weight to any medical opinion, even the opinions of a claimant's treating physician. *Id.* ALJs instead evaluate the "persuasiveness" of medical opinions using five factors: (1) supportability; (2) consistency; (3) relationship to the claimant; (4) specialization; and (5) other factors. *Id.* (c)(1)-(5). Of these factors, supportability and consistency are the most important. *Id.* (a), (b)(2). The regulations, accordingly, require ALJs to explain how they considered the supportability and consistency factors in their determination, which is known as the "articulation requirement." *Id.* (b)(2). Comparatively, ALJs "may, but are not required to, explain" their consideration of factors (3)-(5). *Id.*

In assessing a medical opinion's "supportability," "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). And the "consistency" factor denotes the extent to which the medical opinion "is consistent with the evidence from other medical sources and nonmedical sources in the claim[.]" *Id.* (c)(2). To further illuminate this distinction, "supportability" relates to the objective medical evidence and supporting explanation provided by a medical source to bolster their *own* opinion;

10

by contrast, "consistency" relates to the relationship of a medical source's opinion to *other* medical opinions and evidence of record. 20 C.F.R. § 416.920c(c)(1)-(2).

The articulation requirement from the regulations for weighing medical opinions serves several purposes, one of which is "maintaining public confidence in the basic fairness of the administration of the Social Security program to have disappointed claimants at least understand why the government has rejected [an] opinion[.]" *Smalley v. Comm'r of Soc. Sec.*, No. 20-1865, 2021 WL 4026783, at *4 (6th Cir. Sept. 3, 2021).

APRN Susie Sloan performed a consultative examination on Claimant on November 17, 2021 and opined, based on Claimant's exam and allegations, that:

> It is possible that that claimant may not be able to stand or walk for prolonged periods of time. It may be difficult to bend and squat, especially if the motions are repetitive. There may be difficult climbing stairs or ladders. It may not be possible to perform tasks overhead or lift heavy objects. Engaging in prolonged or intense exertions may cause shortness of air.

(Tr. 1267-1271).

At the end of her RFC analysis, ALJ Thomas discussed Ms. Sloan's opinion and found it was not particularly persuasive. (Tr. 25). ALJ Thomas noted Ms. Sloan's opinions regarding Claimant's ability to walk, stand, bend, squat, climb, and lift but remarked that Ms. Sloan's opinion was "somewhat vague" and was "not entirely supported by or consistent with other medical evidence of record, including the objective clinical findings recorded at the consultative exam as well as the clinical findings in the treatment record." (*Id.*). The other evidence, ALJ Thomas noted, which was previously cited in the RFC, largely shows Claimant's physical condition to be "relatively stable." (*Id.*). Lastly, ALJ Thomas explained Ms. Sloan's opinion was "not very commensurate with the claimant's conservative history of treatment for pain." (*Id.*).

11

Claimant says ALJ Thomas' analysis did not comply with 20 C.F.R. 404.1520c(c)(1). (DN 13, at PageID # 1702-1707). Vagueness, Claimant alleges, is not an appropriate excuse for omitting Ms. Sloan's clear restrictions. (*Id.*). Claimant accuses ALJ Thomas of misconstruing the record in the case and improperly finding that Ms. Sloan's restrictions were not internally supported by her observations. (*Id.*). Overall, Claimant feels ALJ Thomas did not build an accurate and logical bridge between the evidence and her conclusions regarding Ms. Sloan's opinion. (*Id.*). And this error was not harmless, Claimant explains, because if Ms. Sloan's opinions had been included, she would not be able to perform light work. (*Id.*).

The Commissioner responds that ALJ Thomas appropriately considered Ms. Sloan's opinion in the context of the overall record and reasonably concluded the opinion was not particularly persuasive. (DN 15, at PageID # 1722-23). The Commissioner notes that while Claimant would have preferred ALJ Thomas to focus on "a few findings in her treatment record" she feels were consistent with Ms. Sloan's opinion, including instances of muscle and spine tenderness in July 2021 and May 2022, this evidence does not establish reversible error. (*Id.* at PageID # 1725).

In reply, Claimant argues ALJ Thomas's conclusory explanations regarding consistency were not sufficient because she did not link the evidence supporting this conclusion. (DN 16, at PageID # 1734-36). Claimant concludes the ALJ omitted pertinent restrictions from Ms. Sloan's opinion without sufficient explanation, which resulted in a flawed RFC and prejudicial error. (*Id.*).

First, no error results from ALJ Thomas classifying Ms. Sloan's opinion as "somewhat vague." Though an ALJ's classification of an opinion as vague generally does not meet the minimum articulation requirements for addressing supportability and consistency, *see Betty Jo M. v. Comm'r of Soc. Sec.*, 1:23-cv-00367, 2024 WL 4052174, at *7 (S.D. Ohio Sept. 5, 2024); *Tracy*

12

*F. v. Comm'r of Soc. Sec.*, 2:23-cv-00188, 2023 WL 8614065, at *6 (S.D. Ohio Dec. 13, 2023); *Howard H v. Comm'r of Soc. Sec.*, No. 2:20-cv-4932, 2022 WL 765217, at *4 (S.D. Ohio Mar. 14, 2022), an ALJ may properly consider an opinion's vagueness within the supportability factor, *see Misty K. v. Comm'r of Soc. Sec.*, No. 2:21-CV-548, 2022 WL 4376229, at *6 (S.D. Ohio Sept. 22, 2022). And even if the ALJ improperly rejected an opinion solely based on it being speculative or vague, "such errors may in some circumstances be excused as harmless." *Betty Jo M.*, 2024 WL 4052174, at *7 (citing *Tracy F.*, 2023 WL 8614065, at *6-7); *see also Schroeder v. Comm'r of Soc. Sec.*, No. 20-CV-10914, 2021 WL 2305623, at *12 (E.D. Mich. Apr. 21, 2021), *adopted by* 2021 WL 2292332 (E.D. Mich. June 4, 2021) (ALJ may appropriately discount as vague a doctor's opinion that does not translate into functional limitations).

ALJ Thomas did not merely dismiss Ms. Sloan's opinion as vague or speculative. Rather, she correctly noted that the opinion was "somewhat vague" then stated that the opinion was not supported by or consistent with Ms. Sloan's exam findings and other evidence of record. Review of Ms. Sloan's opinion, in fact, reveals vague findings as to Claimant's abilities. Ms. Sloan did not opine in definite terms of vocational ability but instead stated "it is possible claimant may not be able to" or "it may be difficult" for Claimant to perform certain activities. Ms. Sloan's unspecific conclusions do not translate into functional limitations and were appropriately classified as vague.

Finding ALJ Thomas' reference to vagueness was appropriate, the Court turns to whether her assessment of the supportability and consistency factors was sufficient. As to consistency, ALJ Thomas stated Ms. Sloan's opinion "is not entirely . . . consistent with other evidence of record," including "clinical findings in the treatment record." (Tr. 25). ALJ Thomas continued: "[s]uch evidence, *which has previously been cited herein*, shows claimant's physical condition to be

relatively stable." (*Id.* (emphasis added)). ALJ Thomas additionally stated Ms. Sloan's opinion was "not very commensurate with the claimant's conservative history of treatment for pain." (*Id.*).

Although ALJ Thomas did not cite any specific medical records evidencing Claimant's relatively stable condition or conservative treatment history, her reference to the evidence "which has previously been cited herein" suffices. Earlier in the RFC, ALJ Thomas thoroughly discussed Claimant's clinical findings and course of treatment for pain. (Tr. 23-24). ALJ Thomas noted how Claimant underwent a reduction and internal fixation procedure relating to a neck fracture in July 2019, but that evidence during that period did not show much change in her overall physical functioning. (Tr. 23). ALJ Thomas additionally discussed Claimant's right hip x-rays revealing mild degenerative changes, pulmonary function testing revealing only minimal restriction and moderate expiratory obstruction, a 2021 MRI revealing some mild narrowing, mild to moderate recess and foraminal stenosis, and mild effacement, a June 2021 CT scan of the spine revealing mild to moderate changes, and imaging of the spine in May 2022 showing no significant abnormalities beyond a 10-15% compression deformity involving the superior endplate. (Tr. 23, 508-09, 585, 1270, 1272, 1350). As for Claimant's clinical exam findings, ALJ Thomas discussed Claimant's 5 over 5 muscle strength with normal sensation and normal gait in September 2021, normal strength and normal casual and tandem gait in March 20222, and normal gait in August 2022. (Tr. 23, 1399, 1455). Then ALJ Thomas recounted Claimant's conservative treatment for pain, with no serious surgical intervention, stable pain medication giving up to 60% pain relief, and vast improvement in pain after ablation therapy. (Tr. 23-24, 1267, 1324, 1340).

Though other courts have determined the articulation requirement is not satisfied even where the ALJ "previously provided an extensive review of the record evidence before discussing the opinions," *Sparks v. Kijakazi*, No. 2:21-cv-102-DCP, 2022 WL 4546346, at * (E.D. Tenn. Sept.

14

28, 2022) (citing *Hardy*, 554 F. Supp. 3d at 907; *Miles v. Comm'r of Soc. Sec.*, No. 3:20-cv-410, 2021 WL 4905438, at *5 (S.D. Ohio Oct. 21, 2021)), the Court finds ALJ Thomas' analysis here distinguishable. Those courts emphasize that an ALJ "must explicitly point out which evidence they are relying on to support their finding as to persuasiveness, so that the reviewing court and claimant can follow their logic." *Id.* Again, by explicitly referencing the evidence previously cited in her opinion, ALJ Thomas identified the evidence she was relying on in assessing consistency. Moreover, she identified the evidence "previously referenced" as that showing Claimant's physical condition to be relatively stable and Claimant's conservative history of treatment for pain. (Tr. 25). Additionally, the ALJ's recitation did not include contradictory evidence. *See id.* The evidence ALJ Thomas recounted showed Claimant's consistent unremarkable clinical exam findings with no more than moderate abnormalities and relatively conservative pain management treatment. ALJ Thomas, accordingly, provided a logical bridge between the evidence and her conclusion that Ms. Sloan's opinion was not consistent with other evidence in the record.

The same reasoning applies to ALJ Thomas' analysis of the supportability factor. At first glance, ALJ Thomas' determination seems conclusory in noting that Ms. Sloan's findings were not entirely supported by her clinical findings during the consultative examination. ALJ Thomas did not follow this conclusion with any specific clinical findings from Ms. Sloan's opinion. However, ALJ Thomas' reference to "the evidence . . . previously [] cited herein" again saves her analysis from error. Earlier in the RFC, ALJ Thomas discussed Ms. Sloan's objective examination findings, noting that Claimant was documented to "have a steady gait, to be able to walk on toes/heels and to tandem walk without complaint of pain, to be able to complete 75 percent of a normal knee squat despite pain, to have muscle strength testing of 5 over 5 in all major muscle groups, and to be able to perform fine manipulation and gross dexterous movement with each

hand." (Tr. 23, Tr. 1269-70). ALJ Thomas also discussed that Ms. Sloan found Claimant had just slightly reduced mobility due to shoulder pain. (*Id.*). By referencing her earlier discussions of Ms. Sloan's clinical findings, ALJ Thomas provided a logical bridge between such evidence and her conclusions.

Even if ALJ Thomas had erred in articulating the consistency and supportability factors in assessing Ms. Sloan's opinion, such an error may be excused as harmless in three instances: (1) if the medical opinion is patently deficient; (2) if the ALJ adopted the medical opinion or made findings consistent with the opinion; or (3) if the if the goal of the regulation was otherwise met. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004); *Lorraine R. v. Comm'r of Soc. Sec.*, No. 3:20-cv-00396, 2022 WL 4232839, at *5 (S.D. Ohio Sept. 14, 2022); *see also Hardy v. Comm'r of Soc. Sec.*, No. 20-10918, 2021 WL 3702170, at *6 (E.D. Mich. Aug. 13, 2021).

The first category of error does not apply to ALJ Thomas' analysis because Ms. Sloan's medical opinion was not patently deficient. Nor did ALJ Thomas adopt Ms. Sloan's opinion or make findings consistent with her opinion. The lone question, then, is whether the goal of § 404.1520c(b)(2) was met through ALJ Thomas' evaluation of Ms. Sloan's opinion. Or stated otherwise, the Court must decide whether ALJ Thomas' explanation is sufficient to permit meaningful judicial review and enable the Claimant to understand why she determined Dr. Sloan's opinion was "not particularly persuasive." *See Jenna B. v. Comm'r of Soc. Sec.*, No. 3:21-cv-00176, 2022 WL 4395682, at *9 (S.D. Ohio Sept. 23, 2022). The Court finds it is. As explained above, because ALJ Thomas referenced evidence discussed earlier in the RFC determination, the Court can conduct meaningful judicial review and Claimant can understand ALJ Thomas' reasoning for discounting Ms. Sloan's opinion.

### C. Did ALJ Thomas Err in Evaluating Claimant's Subjective Allegations?

Claimant lastly argues ALJ Thomas improperly rejected her subjective allegations without pointing to any genuine inconsistencies between her testimony and the evidence of record. (DN 13, at PageID # 1707-10). Claimant alleges ALJ Thomas failed to explain her rejection of Claimant's testimony regarding her ability to sit, stand, and walk. (*Id.*). Prejudicial error resulted, according to Claimant, because if ALJ Thomas had included restrictions on sitting, standing, and walking, both light jobs would have been eliminated and the outcome of the decision would change. (*Id.*).

The Commissioner maintains that ALJ Thomas reasonably evaluated Claimant's complaints in the context of the overall record in concluding the record failed to support her allegations of disabling limitations. (DN 15, at PageID # 1727-30). The Commissioner notes that ALJ Thomas considered Claimant's testimony regarding sitting, standing, and walking but after considering diagnostic imaging and objective exam findings, reasonably found such allegations were not supported. (*Id.*).

Claimant's reply urges the Court to look beyond the substantial evidence standard and find ALJ Thomas violated 20 C.F.R. § 404.1529 in rejecting Claimant's subjective complaints. (DN 16, at PageID # 1737-39).

Step Four also requires an ALJ to evaluate a Claimant's subjective allegations. 20 C.F.R. §§ 404.1520c, 404.1529(a). An ALJ must consider all "symptoms, including pain, and the extent to which those symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 416.929(a). First, the ALJ must determine whether there are medically determinable impairments that could reasonably be expected to produce the alleged symptoms. Next, if such impairments exist, the ALJ "will consider [the claimant's] statements

about the intensity, persistence, and limiting effects of [the] symptoms" and "evaluate [the claimant's] statements in relation to the objective medical evidence and other evidence" in determining whether a claimant is disabled. *Id.* § 416.929(4). In doing so, the ALJ evaluates the claimant's statements against factors set forth in 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3), including:

> (1) A claimant's daily activities;
>
> (2) The location, duration, frequency, and intensity of pain and other symptoms;
>
> (3) Factors that precipitate and aggravate the symptoms;
>
> (4) The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;
>
> (5) Treatment, other than medication, an individual receives or has received for relief from pain or other symptoms;
>
> (6) Any measures other than treatment an individual uses or used to relieve pain or other symptoms; and
>
> (7) Any other factor concerning an individual's functional limitations and restrictions due to pain and other symptoms.

The ALJ is not required to analyze all seven factors and may discuss only those relevant to the alleged symptoms. *See Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005).

The ALJ's decision must include "specific reasons for the weight given to the individual's symptoms" in a "consistent" and "clearly articulated" way, so "any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 2017 WL 510304, at *10. But the ALJ need not use "magic words" so long as it is clear from the decision as a whole why the ALJ reached a specific conclusion. *Lloyd v. Comm'r of Soc. Sec.*, No. 5:23-CV-01166-SL,

2024 WL 2278251, at *14 (N.D. Ohio Apr. 30, 2024). An ALJ's conclusions regarding subjective symptom evidence receive great deference on review. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012).

ALJ Thomas' evaluation of Claimant's symptoms and pain comply with these regulations and are supported by substantial evidence in the record. ALJ Thomas acknowledged that Claimant feels she cannot work full-time due to pain and recounted her testimony that she cannot sit for long periods because of her lower back pain and hip pain and that she could only stand in one place for 20-25 minutes. (Tr. 22-23). But ALJ Thomas found the weight of the record in the case did not reasonably substantiate such an incapacitating level of physical restriction on a sustained basis. (Tr. 23). ALJ Thomas determined that while Claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, the statements regarding the intensity, persistence, and limiting effects of such symptoms, including her spouse's third-party function report, were "not entirely persuasive or consistent with the objective medical and other evidence in the record to the extent they disagree with the above-stated current residual functional capacity finding for the reasoning herein." (Tr. 23). Then ALJ Thomas proceeded to discuss the objective medical evidence, treatment notes, testing and imaging, prior hearing level decision, Claimant's activities of daily living, and medical opinions of record. (Tr. 22-25).

Upon review, ALJ Thomas clearly articulated specific reasons for discounting Claimant's subjective allegations related to sitting, standing, and walking. ALJ Thomas appropriately weighed Claimant's subjective allegations of pain against several of the applicable § 404.1529(c)(3) factors. For instance, ALJ Thomas found Claimant's subjective physical symptoms were undermined by other evidence, such as the Claimant's apparent activity level as noted during the consultative exam with Ms. Sloan. (Tr. 24). ALJ Thomas also considered that Claimant's treatment for pain

19

had been "rather conservative," had not required surgical intervention, and had not resulted in routine urgent care visits for unbearable pain. (*Id.*). Rather, ALJ Thomas pointed out, Claimant's pain was reasonably well managed through medication and ablation therapy. (*Id.*). Based on these findings, ALJ Thomas determined Claimant's alleged limitations as to sitting, walking, and standing were not supported by the record as a whole. Contrary to Claimant's position, ALJ Thomas' observations demonstrate inconsistencies between her testimony and the other evidence of record. No error results.

### IV. Order

Based on the above analysis, the Court finds the Commissioner's decision is supported by substantial evidence in the record and complies with the applicable regulations. **IT IS THEREFORE ORDERED** that the final decision of the Commissioner is **AFFIRMED.**

This is a final and appealable Order and there is no just cause for delay.

Copies:     Counsel of Record